IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MARK CHARRON,<br><br>        Plaintiff,<br><br>vs.<br><br>CITY OF NORTH PLATTE, a<br>Nebraska Political Subdivision, et al.,<br><br>        Defendants. | 4:18-CV-3090<br><br>MEMORANDUM AND ORDER<br>NUNC PRO TUNC |

      Mark Charron is a Minnesota resident who was investigated by North Platte, Nebraska law enforcement while he was staying at a Super 8 motel in North Platte. He's suing the City of North Platte, a number of North Platte police officers, and the motel and its employees whom he alleges conspired with law enforcement to draw police attention to him.

      North Platte and its officers (collectively, the North Platte defendants) and the motel owners and employees (collectively, the Super 8 defendants) each move to dismiss Charron's complaint. Filing 19; filing 21. The Court will grant the Super 8 defendants' motion (filing 19) in its entirety, and will grant the North Platte defendants' motion (filing 21) in part, but deny it in part.

## I. STANDARD OF REVIEW

      A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements of a

cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For the purposes of a motion to dismiss a court must take all of the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.*

And to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal,* 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief. *Id.* at 679.

Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *See Twombly*, 550 U.S. at 545. The court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.* at 556.

## II. BACKGROUND

Charron checked into the North Platte Super 8 on March 17, 2017. Filing 1 at 6. Jon Berryman, the front desk employee, apparently thought at some point during the evening that he smelled something that might be marijuana. Filing 1 at 7. He called the North Platte Police Department. Filing 1 at 7. Police arrived at the motel, and asked for information from the motel registry about Charron and other guests. Filing 1 at 7. The guest information they were given

included names, vehicle registrations, and home addresses. Filing 1 at 7. The police found Charron's truck in the parking lot and ran the license plate. Filing 1 at 8.

Sometime between 10:00-10:30 p.m., police knocked loudly on Charron's motel room door. Filing 1 at 8. Charron alleges that officers "demanded Charron open his motel door and permit the officers to come into his room." Filing 1 at 8. He also alleges that they "yelled through the door" that they knew he was smoking marijuana. Filing 1 at 8. Charron denied the charge, but officers continued to yell and demand entry. Filing 1 at 8.

Charron opened the door, and one of the officers "shoved his foot in the door to prevent the door from closing." Filing 1 at 9. Charron stepped away from the door to use the room's telephone, but the officer continued to hold the door open. Filing 1 at 9. Charron asked the officer to leave, but according to Charron, the officer replied to the effect of "I have a right to contain the room and preserve the room and control the room." Filing 1 at 9. Charron asserted his "constitutional right to have the police officers not invade his privacy," and told the officers to get a search warrant if they wanted to search the room. Filing 1 at 9. Eventually, they left.

The police asked Berryman whether he wanted them to evict Charron from the premises. Filing 1 at 10. The answer was presumably no, because officers instead knocked on the doors of adjacent rooms before leaving. Charron alleges that

> upon investigation and belief, it has been learned that individual employees of the North Platte Police Department, individually and in their official capacity as police officers with the North Platte Police Department, routinely perform similar illegal searches and

seizures in several hotels located in North Platte, Nebraska, and the illegal acts have gone on for several years.

Filing 1 at 10. And, he alleges, "[t]he owners and employees of Super 8 were well aware that the North Platte Police Department was using the private guest registry information to identify and single out guests based upon national origin, including guests who had out-of-state addresses." Filing 1 at 3. This, he says, amounts to "conspiring with individual employees of the North Platte Police Department to violate the constitutional rights of hotel guests." Filing 1 at 10.

So, he sued the City of North Platte and Peterson Lodging, Inc., the owner of the North Platte Super 8. Filing 1 at 5. He also sued Berryman and Jennifer Priest, the Super 8's general manager. Filing 1 at 5. And he sued North Platte police officers Dale Matuszczak, Chris McColley, Adam Charter, and several John and Jane Does (the officers who were allegedly on the scene) and North Platte police chief Mike Swain. Filing 1 at 5-6. All the individual defendants were sued in their official and individual capacities. Filing 1 at 1. The defendants move to dismiss the complaint. Filing 19; filing 21.

### III. DISCUSSION

Charron's complaint asserts several purported claims for relief:

- A Fourth Amendment claim asserted pursuant to 42 U.S.C. § 1983 (filing 1 at 11-12);
- A claim captioned "Implemeting [sic] a Policy in Which Employees Give Private Information to Law Enforcement" (filing 1 at 12-13), directed at Berryman and Priest; and a separate claim asserting a similar policy-or-custom claim against Peterson Lodging (filing 1 at 13-14);

- A claim for violation of the Commerce Clause (filing 1 at 14-15); and
- A claim pursuant to the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1602 *et seq*. (filing 1 at 15).

1. SECTION 1983—FOURTH AMENDMENT

To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48-49 (1988). "Acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id*.

Charron's Fourth Amendment claim is directed at North Platte itself, the North Platte police officers in their official and individual capacities, and Berryman "as an agent of Chief Swain or Officers of the North Platte Police Department." Filing 1 at 11-12. A number of different issues arise with respect to each defendant. But they will be most clearly addressed by beginning with the actual events of March 17, 2017, before broadening the scope to discuss Charron's policy-or-custom allegations.

(a) Motel Room Knock and Talk

Charron's Fourth Amendment claim comprises several alleged constitutional violations. But only one—the encounter at Charron's motel room door—actually rises to the level of actionable constitutional infringement. The others are nonstarters.

It is, for instance, not unconstitutional for a hotel operator to voluntarily provide registry information to law enforcement. *City of Los Angeles, Calif. v.*

*Patel*, 135 S. Ct. 2443, 2454 (2015); *see United States v. Cormier*, 220 F.3d 1103, 1108 (9th Cir. 2000); *United States v. Willis*, 759 F.2d 1486, 1498 (11th Cir. 1985). The Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities. *United States v. McIntyre*, 646 F.3d 1107, 1111 (8th Cir. 2011).[1] Nor was that information—name, address, and vehicle information—anything in which Charron had a reasonable expectation of privacy. *See United States v. Wheelock*, 772 F.3d 825, 828-29 (8th Cir. 2014); *United States v. Cowan*, 674 F.3d 947, 955 (8th Cir. 2012); *McIntyre*, 646 F.3d at 1111-13; *Kennedy v. City of Braham*, 67 F. Supp. 3d 1020, 1032 (D. Minn. 2014); *see also United States v. Thomas*, 703 F. App'x 72, 78 (3d Cir. 2017), *cert. denied,* 138 S. Ct. 646 (2018); *United States v. De L'Isle*, 825 F.3d 426, 432 (8th Cir. 2016); *United States v. Dasinger*, 650 F. App'x 664, 672 (11th Cir. 2016).

So, Charron hasn't stated a claim against anyone—particularly, the Super 8 defendants—based on alleged information sharing. Charron's motel room, however, is another matter: the Fourth Amendment's protection against unreasonable searches and seizures extends to a person's privacy in temporary dwelling places such as hotel or motel rooms. *United States v. Peoples*, 854 F.3d 993, 996 (8th Cir. 2017).[2] The encounter at the door of Charron's room is best understood by reference to a so-called "knock and talk" citizen-police encounter. It does not violate the Fourth Amendment merely to knock on a

---

[1] The Supreme Court's recent decision in *Carpenter v. United States*, 138 S. Ct. 2206 (2018) does not unsettle that principle, at least in this context: a motel guest clearly still assumes the risk associated with voluntarily providing information to a third party. *Id*. at 2216, 2220.

[2] Had Charron been justifiably evicted by the Super 8, that might be different. *See id*.; *United States v. Molsbarger*, 551 F.3d 809, 811 (8th Cir. 2009). But there's nothing to suggest he was evicted, much less that any eviction would have been justified.

door without probable cause: a "knock and talk" is a consensual encounter and therefore does not contravene the Fourth Amendment, even absent reasonable suspicion. *United States v. Spotted Elk*, 548 F.3d 641, 655 (8th Cir. 2008). And no Fourth Amendment search occurs when police officers restrict their movements to those areas generally made accessible to visitors—such as driveways, walkways, or similar passageways. *Id*.

But a police attempt to "knock and talk" can become coercive if the police assert their authority, refuse to leave, or otherwise make the people inside feel they cannot refuse to open up. *Id*. Although a person who opens a door in response to a simple knock by officers knowingly exposes to the public that which can be seen through the door, one who does so in response to a demand under color of authority does not open the door voluntarily. *United States v. Poe*, 462 F.3d 997, 1000 (8th Cir. 2006). So, "an unconstitutional search occurs when officers gain visual or physical access to a motel room after an occupant opens the door not voluntarily, but in response to a demand under color of authority." *United States v. Conner*, 127 F.3d 663, 666 (8th Cir. 1997).

And that's what happened in this case, at least allegedly: Charron opened the door to his motel room in response to a demand under color of authority, and a North Platte officer held the door open to watch what was happening in the room. Those allegations, at least at the pleading stage, are enough to suggest a plausible Fourth Amendment violation.[3] Actions taken in response to a demand under color of authority may constitute a search, even where the officer conducts no physical search. *Lawyer v. City of Council Bluffs*, 361 F.3d 1099, 1103 (8th Cir. 2004). And as a practical matter, Charron might

---

[3] It's important to note that the North Platte defendants have not asserted a qualified immunity defense at this point. *See Gomez v. Toledo*, 446 U.S. 635, 640-41 (1980).

have been seized as well, not being free to leave his motel room. *See United States v. Jerez*, 108 F.3d 684, 690 (7th Cir. 1997).

Charron has at least stated a Fourth Amendment claim with respect to the officer or officers who allegedly forced him to open his motel room door, then held it open. But Charron's complaint doesn't identify those officers—rather, those officers are identified only as "John Does 1-5." So it's those unnamed officers against whom Charron can pursue his individual-capacity claims. The only allegation in the complaint about what Matuszczak, McColley, or Charter actually did was that they "arrived at the hotel." Filing 1 at 7. That obviously doesn't state a claim as to them. And as explained above, the Super 8 defendants aren't liable either.

(b) Policy or Custom Claims

A political subdivision like North Platte may not be sued under § 1983 on a *respondeat superior* theory of liability—instead, it may be found liable only where the entity *itself* causes the constitutional violation at issue by executing a policy or custom that inflicts the injury. *Brewington v. Keener*, 902 F.3d 796, 800-01 (8th Cir. 2018). When a plaintiff can point to an official policy that either violates federal law, or directs an employee to do so, no evidence is needed other than a statement of the policy and its exercise to establish a constitutional violation. *Id.* at 801. But when a plaintiff alleges an unwritten or unofficial policy, there must be evidence of a practice, so permanent and well-settled so as to constitute a custom, that existed. *Id.*

The same is true for the official-capacity Super 8 defendants, even if they were acting under color of state law for § 1983 purposes: a corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies: the proper test is whether there is a policy, custom or action by those who represent official policy that inflicts injury actionable

under § 1983. *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975-76 (8th Cir. 1993); *see Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007); *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). And similar principles apply to Swain, who's being sued for supervisory liability: because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. *Marsh v. Phelps Cty.*, 902 F.3d 745, 754 (8th Cir. 2018). Each Government official, his or her title notwithstanding, is only liable for his or her own misconduct. *Id*. So, liability depends on establishing notice of a pattern of unconstitutional acts, which the supervisor either encouraged or ignored. *See Brewington*, 902 F.3d at 803.

Charron's problem is that while he's pleaded a "policy or custom" of the North Platte defendants, and alleged conspiracy with the Super 8 defendants,[4] his specific allegations in that regard don't encompass the only actual constitutional violation he's identified. His conclusory allegations that North Platte police "routinely perform similar illegal searches and seizures"—and that that the Super 8 defendants helped—is supported by *specific* allegations only about a practice of identifying motel guests and gathering information about them. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004); *see also Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1076

---

[4] Although § 1983 can only be used to remedy deprivation of rights done under the color of law, a private actor can be liable under § 1983 for conspiring with state officials to violate a private citizen's rights. *Helmig v. Fowler*, 828 F.3d 755, 763 (8th Cir. 2016). It's questionable whether Charron has adequately pled such a conspiracy with respect to any of the events he alleged. *See id.*; *see also Holmes v. Slay*, 895 F.3d 993, 1001 (8th Cir. 2018); *Deck v. Leftridge*, 771 F.2d 1168, 1170 (8th Cir. 1985). But given the Court's conclusion regarding the *scope* of the alleged conspiracy, the Court need not definitively resolve that question.

(8th Cir. 2016). Nothing in the complaint can be read to suggest a pattern or practice of coercing access to motel rooms—and the facts of Charron's own case are not enough to show the existence of a policy or custom. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013).

To summarize: alleging a policy or custom of investigating motel guests, or a conspiracy to investigate motel guests, does not state a constitutional claim, because such investigations are not unconstitutional. And alleging such a policy or custom is not the same as alleging a policy or custom of invading motel rooms, which Charron's allegations do not establish.

Those conclusions dispose of Charron's § 1983 claim with respect to the Super 8 defendants in every capacity. They also dispose of Charron's § 1983 claim as to North Platte and each of the North Platte defendants in their official capacities. *See Lewis v. Clarke*, 137 S. Ct. 1285, 1290 (2017). And they dispose of Charron's claims against Matuszczak, McColley, Charter, and Swain in their individual capacities. Charron has stated a claim only as to John Doe defendants in their individual capacities.

### 2. SUPER 8 CLAIMS

Next, Charron asserts two separately captioned claims for relief against the Super 8 defendants, that are largely coextensive with his § 1983 claim (to the extent they're not identical). He alleges that the Super 8 defendants are responsible for "call[ing] law enforcement without reasonable suspicion or probable cause that a crime was being committed." Filing 1 at 12-14. And he alleges that they "provided law enforcement with hotel registry information in violation of the Fourth and Fourteenth Amendments to the United States Constitution." Filing 1 at 13-14.

But as discussed above, it wasn't unconstitutional for them to provide law enforcement with registry information. And a private person doesn't

conspire with a state official merely by invoking an exercise of the state official's authority. *Young v. Harrison,* 284 F.3d 863, 870 (8th Cir. 2002). Nothing alleged indicates that law enforcement substituted the judgment of the Super 8 defendants for their own. *See Shqeirat v. U.S. Airways Grp., Inc.,* 645 F. Supp. 2d 765, 790 (D. Minn. 2009). Simply put, Charron can provide the Court with no authority suggesting that citizens are required to have reasonable suspicion or probable cause before calling police. These claims will be dismissed.

### 3. COMMERCE CLAUSE

Charron's next claim is that the defendants are violating the Commerce Clause by discriminating against out-of-state residents. The Commerce Clause of the Constitution gives Congress the power "to regulate commerce . . . among the several states . . . ." U.S. Const. art. I, § 8. But although the Commerce Clause is framed as a positive grant of power to Congress, it contains a further, negative command, known as the dormant Commerce Clause. *Comptroller of Treasury of Maryland v. Wynne,* 135 S. Ct. 1787, 1794 (2015). "By prohibiting States from discriminating against or imposing excessive burdens on interstate commerce without congressional approval, it strikes at one of the chief evils that led to the adoption of the Constitution, namely, state tariffs and other laws that burdened interstate commerce." *Id.*

The dormant Commerce Clause precludes states from discriminating between transactions on the basis of some interstate element. *Id.* A discriminatory law is virtually *per se* invalid, and will survive only if it advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives. *Dep't of Revenue of Ky. v. Davis,* 553 U.S. 328, 338 (2008). Alternatively, laws directed to legitimate local concerns, with incidental effects upon interstate commerce, will be upheld

unless the burden imposed on interstate commerce is clearly excessive in relation to the putative local benefits. *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 346 (2007); *see Davis*, 553 U.S. at 338. If a legitimate local purpose is found, then the question becomes one of degree, and the extent of the burden that will be tolerated depends on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities. *Raymond Motor Transp., Inc. v. Rice*, 434 U.S. 429, 441-42 (1978); *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

Charron doesn't clearly explain which of these tests he's relying on. *See* filing 24 at 8-10. But what Charron has described is not only paradigmatically, but *literally* a local government's exercise of the police power on a matter of local concern. *See United Haulers*, 550 U.S. at 342, 347. Nothing here resembles an overt form of economic protectionism. *See City of Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978). A stay in a North Platte motel "does not transform into an integral part of interstate commerce" just because the guest "happens to be beginning or completing an interstate trip." *See Exec. Town & Country Servs., Inc. v. City of Atlanta*, 789 F.2d 1523, 1526 (11th Cir. 1986). Nothing Charron alleges has the practical effect of controlling commerce outside Nebraska, or even outside North Platte. *See Am. Exp. Travel Related Servs. Co. v. Kentucky*, 730 F.3d 628, 634 (6th Cir. 2013). And it's not apparent how North Platte's purported policy places any special burden on interstate commerce at all. *See Leib v. Hillsborough Cty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1311 (11th Cir. 2009).

In fact, Charron's allegations bear so little resemblance to regulation of interstate commerce that it's difficult to meaningfully apply any established rubric. It's certainly not economic protectionism to interfere, allegedly, with a

traveling customer's relationship with a *local* business. It suffices to conclude that Charron has alleged no discrimination against interstate commerce, and at best only incidental effects on it. His complaint does not state a claim for a Commerce Clause violation.

4. NEBRASKA CONSUMER PROTECTION ACT

Next, Charron alleges a violation of the Nebraska Consumer Protection Act, premised on an alleged violation of the contract between himself and the Super 8. Filing 1 at 15. This claim is thinly pleaded: Charron asserts only that the defendants "engaged in unfair practices that were immoral, unethical, oppressive or unscrupulous" and that he had a contract with Super 8 that was "breached . . . and the manner of the breach was substantially aggravated." Filing 1 at 15.

But to begin with, the Act generally prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Neb. Rev. Stat. § 59-1602. That's enough to dismiss the North Platte defendants, who weren't engaged in any trade or commerce within the ambit of the Act. *See id.*; Neb. Rev. Stat. § 59-1602(2); *see also Moats v. Republican Party of Nebraska*, 796 N.W.2d 584, 593 (Neb. 2011); *cf. Nelson v. Lusterstone Surfacing Co.*, 605 N.W.2d 136, 141 (Neb. 2000).[5]

And as for the Super 8 defendants, it's simply asserted that the Super 8 breached a contract with Charron. Even the breach of contract isn't sufficiently pleaded: assuming the existence of a contract, it's not clear what provision was allegedly breached, or how, or which of the defendants breached it. But beyond that, a breach of contract isn't sufficient to prove a violation of the Act. *Triple*

---

[5] Having reached that conclusion, the Court need not parse out which, if any, defendants might benefit from sovereign immunity.

*7, Inc. v. Intervet, Inc.*, 338 F. Supp. 2d 1082, 1087 (D. Neb. 2004); *Raad v. Wal-Mart Stores, Inc.*, 13 F. Supp. 2d 1003, 1014 (D. Neb. 1998). Section 59-1602 is limited to "to unfair or deceptive acts or practices that affect the public interest." *Arthur v. Microsoft Corp.*, 676 N.W.2d 29, 36 (Neb. 2004); *Nelson*, 605 N.W.2d at 683-84. While Charron suggests other people were affected, *see* filing 23 at 9, the Court cannot infer an effect on the public interest where the "conduct of any trade or commerce" that's relied upon to support the claim is a vague, conclusory assertion of a single breach of contract.

In sum, while allegedly providing information to law enforcement might have been a "practice," it wasn't a practice in the conduct of trade or commerce. *See* § 59-1602.[6] And the supposed practice that *was* in the conduct of trade or commerce—the breach of contract—is inadequately pleaded. Accordingly, Charron has failed to state a claim under the Act.

### 5. MOTION TO STRIKE

Finally, the North Platte defendants also move to strike various parts of Charron's complaint. Specifically, they want to strike Charron's prayer for punitive damages and his jury demand as to North Platte and the official-capacity defendants, and his jury demand as to his Consumer Protection Act claim and prayers for equitable relief and declaratory judgment. Filing 22 at 9-12. To the extent that it's not already moot, that motion will be denied: there's no point to editing and interlineating a plaintiff's complaint at the pleading stage with respect to a jury demand or prayer for relief. What issues

---

[6] Nor is it clear that Charron was "injured in his or her business or property" as required to maintain a civil suit under the Act, or that he sustained "actual damages" recoverable under it. *See* Neb. Rev. Stat. § 59-1609. That could also present a lurking jurisdictional problem. *See* filing 1 at 4; 28 U.S.C. § 1332.

might be decided by a jury, and the relief to which the plaintiff might be entitled, are not questions that need answers for the foreseeable future.

IT IS ORDERED:

1. The Super 8 defendants' motion to dismiss (filing 19) is granted.

2. The North Platte defendants' motion to dismiss (filing 21) is granted in part and denied in part.

3. The North Platte defendants' motion to strike (filing 21) is denied.

4. The City of North Platte, Mike Swain, Dale Matuszczak, Chris McColley, Adam Charter, Peterson Lodging, Jennifer Priest, and Jon Berryman are terminated as parties.

5. This matter is referred to the Magistrate Judge for case progression.

Dated this 31st day of October, 2018.

BY THE COURT:

John M. Gerrard
United States District Judge